The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced except for Souverino Frith et al. v. Whole Foods Market Inc. et al. Appeal No. 21-1171 which will be heard fourth today. And the times will be as allotted to counsel. The first case today is United States v. Christopher Saemisch, Appeal No. 19-1732. Attorney Romala, please introduce yourself for the record and proceed with your argument. Good morning to the panel and may it please the court. My name is Annabelle Romala representing the appellant, Christopher Saemisch. I would ask the court for two minutes for rebuttal. That is fine and before we get started, Judge Torrenson from the District Court in New Hampshire is pitching in today to give us her assistance and we just want to say thank you for your help. You're welcome but I have to correct you that I'm from Maine. Oh, sorry about that. You better have. Anything south of that, you know, the two states are just one and the same but Maine. All right, counsel, you may proceed. Thank you. The case before this court centers around a government sting but this court has recognized that the government does not have activity. Now because this particular sting involved government overreach, defense counsel appropriately pursued an entrapment defense at trial but the trial court impermissibly precluded Saemisch from presenting evidence that supported his entrapment defense and then the court rejected the request for an entrapment instruction and because of these errors, Saemisch is entitled to a new trial. I would like to first start with trial court's decision to prohibit the defense expert, Dr. Weiss, from testifying. Mr. Saemisch had the initial burden of production on his entrapment defense but this court has repeatedly held that that burden is not high. I'd like to refer to the court to decision issued earlier this month on Perez Rodriguez where it discussed the modest burden to warrant an entrapment instruction. Counsel, I thought you might refer to that case. I have to observe that I cannot think of a case in which the history of the defendant, by history I mean criminal history, a pattern of activity involving child pornography was more extensive than this case and hence in that way is entirely different from the history in Perez Rodriguez. I mean it does seem to me that you have an unusually difficult task in arguing that the judge was wrong to the burden is modest. You could not meet your modest burden of production on the predisposition prong. So how do you overcome what seems to be an almost insurmountable burden in making that argument? Well I think where Perez Rodriguez is extremely helpful is demonstrating that even though there is a lack of predisposition or a lack of government inducement, the inference is supposed to be drawn in favor of the defendant. So in this particular case, we acknowledge that Mr. Simish had prior convictions involving child sex offenses but criminal history is not dispositive and a past conviction does not mean you're necessarily predisposed to commit another child sex offense and I think it's important to note that this court has never held that only those who have lived completely crime free lives are protected from government overreach. Habitual offenders can be entrapped as well and if the trial court had allowed Simish to present his entrapment defense and he did have evidence to support it and particularly he had Dr. Weiss who could have explained that there was inducement here. Simish was particularly vulnerable. Now Dr. Weiss wasn't going to testify that Simish suffered from an addiction but Dr. Weiss could testify as to the general characteristics of an addiction and based on the other record evidence. How did Dr. Weiss say that the characteristics of addiction are important if your client was in fact suffering from an addiction but he couldn't say since he had never examined him whether he was suffering from an addiction or whether he was just a sociopath? Well I don't think it's uncommon for experts to testify about a condition without necessarily examining an individual. A couple of examples. There has to be some basis for thinking that there's relevant expert testimony to offer. I mean for instance if he had been diagnosed in the past as having an addiction then that would have been a basis perhaps for the doctor to explain what that addiction meant to your client and how that was relevant to predisposition but we don't have any evidentiary link. Absolutely. There must be some basis but there was a basis here. PTSD and battered women's syndrome are a couple of examples where a expert might testify about a condition without necessarily examining the patient and the evidence is here because if you combine Dr. Weiss's testimony about the general traits of a behavioral addiction the jury could infer from other evidence in the record that Simish had those qualifying traits. I mean addiction is a compulsive need for a substance or behavior that has harmful physical psychological or social effects and there is evidence here. Simish engages in risky behavior. He discusses discusses his interest in child pornography although in coded language over an email line that he knows is monitored and one court has noted that the behavior of individuals interested in child pornography tends to be addictive and long-standing. So the jury could have come to that conclusion looking at Dr. Weiss's testimony and also the other record evidence. It's really just a combination of the evidence that would have allowed Mr. Simish to meet his small burden. The problem here is the trial court did not allow Simish to present the testimony of Dr. Weiss because the trial court felt it was not relevant but it was absolutely relevant. Counselor, it seemed to me that in proffering Dr. Weiss's testimony it was presented as being relevant to the issue of inducement that he was particularly susceptible to the kind of government sting that was in play here. I think the trial court took the view that to the extent that Dr. Weiss was going to talk about inducement that was not relevant because the court had your burden of production on predisposition. So wasn't wasn't Dr. Weiss's testimony irrelevant in another sense that it did not at least as presented did not even go to the issue of predisposition. Again it was presented as relevant to the issue of inducement. Isn't that another problem? It was presented as relevant to both prongs. I think part of the issue was Simish was not allowed to put on a testimonial proffer. I mean Dr. Weiss was in the courtroom ready to testify and it's really baffling to me that the trial court would not allow a record to be made so we could fully flesh out what Dr. Weiss would testify to and in terms of predisposition. Would Dr. Weiss have testified to in a testimonial proffer that wasn't apparent from the letter that was submitted to the court? Well I want to point out that that letter submitted to the court was not written with a mindset that it would serve as a proper. It really was just an expert. Answer the question what was it that he would have added? I think he would have added that there's a difference between predisposition and addiction. That just because somebody suffers from a behavioral addiction doesn't mean that they are at all times predisposed to commit a criminal offense. I think it's important to note that there's value in hearing oral testimony and being able to ask follow-up questions. We're limited to this expert disclosure that wasn't intended to be a proffer so the court really just like tied the hands of the defense in being able to make this record. So we only have the written disclosure not because defense counsel not because defense counsel didn't attempt to put on a testimonial proffer but the trial court just precluded it. All right any other questions from colleagues right now? All right thank you counselor. Attorney Romala please mute your audio and video. Attorney Lockhart please unmute your audio and video and proceed with your argument. Good morning Donald Lockhart for the government. The defense conceded in the district court that the evidence of predisposition was quote overwhelming. That's at page six of the sealed appendix. Not only was the evidence of predisposition overwhelming but the evidence showed that the defendant was actively engaged in distributing child pornography in the months leading up to the charged crimes without any hint of government involvement during those months. Now there's been a... What evidence are you referring to? Are you referring to the fact that on the thumb drive there was a video that was dated back to early or mid-February? That's just one very small piece in the overall calculus your honor. I would go back to 1997 first chronologically where the defendant was convicted of an actual contact offense involving Akina a young girl and the distribution of child pornography relating to that contact as part of which he was a member of something called the Orchid Club which specialized in sexually abusing young children and then sending the videos around on the internet. I would move forward to February 27, 2016. This is now several months before Mr. Dmitri Braun became a government agent. The defendant says as far as the antiques business goes it's very prolific now with new ways to present goods. That's a joint appendix page 717. The defense concedes that antiques business is the child pornography business. The defendant saying it's very prolific. He found new ways to present his goods, hawk his wares. Two days later the defendant says I prefer to trade antiques online. Business is booming. That's 719 of the joint appendix. A couple days after that he says that he's engaged in a terabytes worth of trade with another child pornography dealer. He's making an argument that although he had not, an agent had not come into the picture yet, the agent should have, we should view this as an adoption of everything he did at least until I think the time that, at least by the time that the attorney for the defendant contacted the government. What is your position on that and why shouldn't we sort of backdate it to, if it's all been used, why shouldn't that date be more like February 28? Okay, a couple points on that your honor. First of all the argument you're referring to is made for the first time in the defense reply brief at pages five through six. It was not raised in any fashion whatsoever in the defense opening brief, therefore it's waived. Second procedural point, the argument that you're referring to was not meaningfully developed in the district court either, so at best it's forfeited and review would be for plain error. If you look at the two first circuit cases cited on page five of the reply brief, the only cases cited in support of this argument, you'll see that in both decisions this court bypassed the issue, didn't resolve it, and indeed in one case referred to it as a novel issue, and novel understates it because if you look at the case law, you will not find a single case that endorses that theory, and under those circumstances we can't have a plain or obvious error, not to mention which the defendant fails the third and fourth prongs because of the plain vanilla problem about predisposition, right? So even if we were to posit that Dimitri Braun was a government agent somehow retroactively as far back as February of 2016, the defendant would still be in the box of having to predisposition, so that kind of theory just couldn't help him. What date would government pose as the date that the government became involved? April 13th of 2016, when the agents communicated for the first time with Mr. Braun when they went out to Fort Devens. There's a little bit of confusion in the record, I think, about the sequence of events here, so I'd like to clarify that although the defendant sent a letter on February 28th, 2016, essentially offering his services as a cooperator, the record shows that that letter did not go to the government initially, it went to the defendant's attorney who was in New York. That attorney then reached out to some agents who were out in Las Vegas. Those agents in Las Vegas then got that letter to the case got it in late March or early April, but what is crystal clear is that there was no government communication with Braun until the agents met with him that day at Fort Devens on April 13th, 2016. So that's the date when he became a government agent, but even as I say, if you were to posit that he became a government agent way back in February, we'd still have the same problem here, which is that there was overwhelming evidence of predisposition and indeed overwhelming evidence that the defendant was actively engaged in distributing child pornography. So even if Braun was a government actor as far back as February, it doesn't allow the defendant to get this defense before the jury. Counsel, I'd like to ask, it seems to me the trial judge here was unusually aggressive in dealing with the possible entrapment defense. If I understand the record correctly, even before the trial began, the trial court demanded an ex parte proffer from the defense as to what the entrapment defense might look like. That strikes me as a bit unusual. I'd be interested in your comment on that, whether that is unusual. And then when the government's case is over, once again says that you have not met, referring to the defendant, you have not met your burden of production on the entrapment defense. So there'll be no instruction on that. At that point, did the court even know what the defense might be? Yes. It struck me that the district court's approach again was really quite aggressive. Do you think that's a fair characterization about the district court was doing here? No, I don't, your honor. And for the following reasons, the sequence of events actually is that the government first noted the problem with any entrapment defense well before trial. The defense then did not just a written proffer, but oral proffers. And those oral proffers continued through the trial actually. So the defense had several opportunities to explain the relevance of Dr. Weiss's testimony and how it would support an entrapment defense. So it's not as though the judge just sort of cut the defense off at the knees, laid a trial, and it was a big surprise for the defense. And somehow they found that their entire defense was yanked away from the jury. It's more the case that the government and the district court appropriately warned the defense well before trial and during trial that this was a problem. So we actually see what the court is referring to as aggressiveness as a plus factor in the sense that you don't want district court judges to lull defense attorneys into a false sense of security that they're going to be able to present an entrapment defense when it's so crystal clear that the evidence of predisposition is such that there's just no way that defense is going to get off the ground. Now, the judge didn't close the door completely on it. The judge left it open. But as the trial progressed and as the evidence of predisposition mounted inexorably, the judge appropriately stuck to his initial assessment concerning predisposition. So it couldn't have come as any surprise to the defense attorneys that they found themselves in this spot. So it sounded like at the end of the government's case, the court was saying, no matter what kind of a case you put on, your entrapment defense is not going to go to the jury. Having just heard the government's case, I'm convinced there's no way you can meet your burden on predisposition. It sounds like that's what happened here. No, it's only part of what happened. It's not just the government's case that the judge was referring to. It was the sheer absence of anything in the defense proffer, which could have even remotely suggested that they could satisfy the lack of predisposition prong. That's the key here. The defense had multiple opportunities to or a lack of predisposition. Indeed, they were even allowed to put on Dmitry Braun to testify along the lines of what we would call an entrapment light defense. They weren't getting an instruction on it, but effectively they got some of their points in before the jury to the effect that it was a setup. I'll rest on our brief unless there are no further questions. Thank you. Attorney Lockhart, please mute your audio and video. Attorney Romala, please unmute your audio and video and proceed with your rebuttal time. I would like to address a couple points. First, the government went through a few of the emails that were between Simish and Braun. There were about 200 emails between the two of them. Braun was the one who introduced the sexual element into the emails. It did not come from Simish. I would like to note that Simish, during those emails, even expressed reluctance to share any child pornography with Braun. Then Braun continued on with the pressure. He says, I really want to see. He said, I need this tour of your collection. He asked for that tour on a repeated number of occasions. Perez Rodriguez says, pressure, that amounts to subtle pressure. Here, Braun was subtle and persistent. I would also like to note that it seems there was a little bit of embellishment in these emails. At one point, Simish says, you and I have had colorful conversation, but I'm not as wild as I may have come across. My boring life is because I'm living straight and narrow. I think it is not really fair to say everything in these emails are a true reflection of what really is going on in reality. What is the date of the first email? October 2015. That was from Braun to Simish. To the government's point about entrapment by ratification not being raised, it was raised below in the district court. Judge O'Toole decided that entrapment by a private agent did not exist. We talked about inducement and predisposition in our opening brief. We specifically referred to entrapment by ratification in the reply brief because the government says or argues there's no way that there was inducement because the government did not become involved until the meeting in April, whereas we argue Braun was involved starting in October because he was communicating with Simish, but absolutely in February because he offered to set Simish up with a fixer for child sex purposes. Before that, there had been no sexual element to the counsel. If there are no other questions from the court, we rest on our briefing. Thank you. That concludes argument in this case. Attorney Romala and Attorney Lockhart, you should disconnect from the hearing at this time.